UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
MARTY MORROW,                          :
                                       :
                    Plaintiff,         :       08 CIV. 6123 (DLC)
                                       :
          -v-                          :       OPINION AND ORDER
                                       :
METROPOLITAN TRANSIT AUTHORITY, NEW    :
YORK CITY TRANSIT AUTHORITY, MANHATTAN :
AND BRONX SURFACE TRANSIT OPERATING    :
AUTHORITY,                             :
                                       :
                    Defendants.        :
-------------------------------------- X


Appearances:

For Plaintiff:

John Nicholas Forte
Scott Michael Mishkin, PC
One Suffolk Square, Suite 240
Islandia, NY 11749

For Defendants:

Francine E. Menaker
Office of the General General Counsel
New York City Transit Authority
130 Livingston Street, Room 1210
Brooklyn, NY 11021

DENISE COTE, District Judge:

     The defendants Metropolitan Transit Authority ("MTA"), New

York City Transit Authority ("NYCTA") and Manhattan and Bronx

Surface Transit Operating Authority ("MABSTOA") have moved to

dismiss this employment discrimination action brought by former

MTA bus driver Marty Morrow, a 62-year-old African American.

For the following reasons, the claims of age discrimination and retaliation are dismissed.  Morrow is given leave to replead a single claim of race discrimination.

BACKGROUND

Morrow began employment with the MTA in 1982.  On May 11, 2007, a wheelchair-bound passenger fell and hit her head on the sidewalk when the wheelchair lift on Morrow's bus malfunctioned and the wheelchair flipped backwards.  Morrow's lawsuit complains of the investigation that followed and that he was subjected to increased supervision.  Morrow was eventually placed on restrictive duty, not permitted to drive a bus for six months, and disciplined.  On November 16, 2007, Morrow left the MTA, and asserts that the MTA constructively discharged him.

Morrow wrote to the President of the MTA twice after the May 2007 accident.  In a May 15, 2007 letter he complained that the investigator who arrived at the scene of the accident on May 11 compromised the integrity of the evidence.  A June 4, 2007 letter asserted that union representatives were getting special treatment and that he was being retaliated against because of a complaint he had made in 2004 about workplace violence.  It asked that he not be harassed for minor infractions.

On August 14, 2007, Morrow contacted the United States Equal Employment Opportunity Commission (the "EEOC") and two

days later the EEOC sent him a letter and questionnaire to complete.  The letter explained that it appeared, based on the information he had provided, that his situation "may be covered by the laws we enforce."  It added that to begin the charge-filing process he had to complete the entire questionnaire immediately since any charge of discrimination had to be filed within 180 days of the date of harm.  It advised him that the charge filing process itself can take up to two hours to complete and that information about those procedures was available on the EEOC web site.  Finally, it cautioned that submission of the questionnaire may not meet all requirements for filing a charge, but it would allow the EEOC to determine whether it could assist him.

The questionnaire is titled "Intake Questionnaire."  It again advised that a charge of discrimination must be filed within 180 days, or in some places, within 300 days of the alleged discrimination, and that the questionnaire would be reviewed to determine EEOC coverage.  Fine print at the end of the questionnaire advised that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination."  It added, however, that the information on the form would be used "to determine the existence of facts relevant to a decision as to whether the

Commission has jurisdiction over allegations of employment discrimination and to provide such charge filing counseling as is appropriate." Finally, it explained that while providing the requested information was not mandatory, the failure to answer the question might hamper "the Commission's investigation of a charge of discrimination."

In his completed questionnaire, which is dated September 6, 2007, Morrow described various disciplinary actions that had been taken against him following the May 15 accident, and checked off boxes for race, age, national origin, and retaliation in response to a question regarding the basis for his claim of discrimination. In a short one-paragraph statement which he attached to the questionnaire, Morrow complained of a leadership style that punishes workers through a punitive discipline system. It states,

> [t]he basis for my claim of employment discrimination is the long standing style of leadershipe that punishes workers with a excessive and punitive discipline system. Being a educated black man with 25 years behind the wheel of a NYCT bus, I cant help feeling that this bad treatment is because of my race. I dont see the fire dept. or the police dept. going out of there way to give a worker a violation or dismissal for a minor infraction of company rules. the president of my union [compares] MTA NYCT managers . . . to overseers on colonial plantations. Its the unlawful events that occured on the job by my employer, my association with the union president, the increased surveillance of me behind the

4

> wheel, and unjustified negative evaluations
> from my boss that have lead to this
> application of employment discrimination.[1]

After leaving his job, Morrow filed a formal charge of discrimination with the EEOC.  The letter of instructions reminded him "to show a definite connection with, or relationship between the EEO basis you use [e.g., race] and the events you allege are discriminatory."  It indicated that documents attached to the intake questionnaire would be used as "background material."  In completing a February 8, 2008 Charge of Discrimination form, Morrow checked a box that identified "retaliation" as the basis of the discrimination, and identified the relevant dates as between May 11 and November 16, 2007. This time Morrow did not check the other boxes, which included boxes for race, color and age.  Morrow's one-page narrative complaint explained that he believed that he had been disciplined and harassed because he had written the MTA's President.  Morrow attached copies of the two letters he had written to the President.  Morrow did not mention his race or age in the narrative paragraph or in the two letters.

On April 8, 2008, the EEOC notified Morrow that it was closing its file and issuing a notice of his right to sue. According to the EEOC, Morrow had failed to identify any

---

[1] The grammatical and spelling errors that appear in this passage appeared in the original submission to the EEOC.

protected activity in which he had engaged to support his claim
of retaliation.

On July 3, 2008, Morrow filed this action, alleging claims
based on race, national origin, and age discrimination and
retaliation.  In an amended complaint dated October 2, Morrow
reasserted the race, age and retaliation claims pursuant to 42
U.S.C. §§ 2000e et seq. ("Title VII"), 29 U.S.C. §§ 621 et seq.
("ADEA") and 42 U.S.C. § 1981 ("§ 1981").  Following an initial
pretrial conference on December 19, the defendants moved on
February 3, 2009 to dismiss this action pursuant to Fed. R. Civ.
P. 12(b)(1), (6), and 12(c).[2]  The motion was fully submitted on
February 27, 2009.

DISCUSSION

The defendants contend that there is no subject matter
jurisdiction over the Title VII and ADEA race and age
discrimination claims because Morrow failed to exhaust his
administrative remedies for those claims.  They assert that the
retaliation claim fails to state a claim since the plaintiff has
not alleged that he engaged in protected activity before his
constructive discharge.  Finally, they move to dismiss the
§ 1981 claim on the ground that he has failed to plead that any

---

[2] Defendants originally attempted to move to dismiss on February
2, but the motion was terminated because of filing errors.
Defendants correctly filed an amended motion to dismiss the
following day.

race discrimination that he experienced was pursuant to an official policy or custom.[3]

Despite defendants' characterization of their motion as motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, the entire motion is properly addressed as one seeking dismissal for failure to state a claim only.  "[D]ismissal for failure to exhaust is more properly considered as a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)," not dismissal for lack of subject-matter jurisdiction.  McInerney v. Rensselaer Polytechnic Institute, 505 F.3d 135, 138 (2d Cir. 2007).  "[F]ailure to exhaust [EEOC] administrative remedies is not a jurisdictional defect."  Fernandez v. Chertoff, 471 F.3d 45, 58 (2d Cir. 2006).

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."  Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104 (2d Cir. 2008) (citation omitted).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  Achtman v. Kirby, McInerney & Squire, LLP,

---

[3] The plaintiff does not oppose that portion of the motion which seeks dismissal of the claim for punitive damages.

464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  A court
may also consider "any written instrument attached to the
complaint, statements or documents incorporated into the
complaint by reference ... and documents possessed by or known
to the plaintiff and upon which it relied in bringing the suit"
on a motion to dismiss.  ATSI Commc'ns, Inc. v. Shaar Fund,
Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

     Motions under Rule 12(b)(6) are evaluated according to a
"flexible plausibility standard, which obliges a pleader to
amplify a claim with some factual allegations in those contexts
where such amplification is needed to render the claim
plausible."  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008)
(citation omitted).  "To survive dismissal, the plaintiff must
provide the grounds upon which his claim rests through factual
allegations sufficient to raise a right to relief above the
speculative level."  ATSI Commc'ns, Inc., 493 F.3d at 98
(citation omitted).

     Under the pleading standard set forth in Rule 8(a)(2),
complaints must include a "short and plain statement of the
claim showing that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2).  "[A] plaintiff is required only to give a
defendant fair notice of what the claim is and the grounds upon
which it rests."  Leibowitz v. Cornell Univ., 445 F.3d 586, 591
(2d Cir. 2006).  Rule 8 is fashioned in the interest of fair and

8

reasonable notice, not technicality, and therefore is "not meant
to impose a great burden upon a plaintiff." Dura Pharms., Inc.
v. Broudo, 544 U.S. 336, 347 (2005).

While the complaint does not attach Morrow's two letters to
the President of the MTA, nor his submissions to the EEOC and
the EEOC notice of dismissal, each of these documents is
properly considered on this motion. See ATSI Commc'ns, Inc.,
493 F.3d at 98. The two letters to the President are integral
to the complaint's retaliation claim, since they constitute the
alleged protected activity on which that claim depends. The
EEOC documents are in the possession of the plaintiff and were
relied upon in filing this lawsuit; they constitute the basis
for Morrow's assertion that he timely exhausted his
administrative remedies before filing this action. Moreover,
Morrow relies in his amended complaint on the September 6, 2007
submission to the EEOC to support its contention that he made a
timely complaint of discrimination to the EEOC. Morrow does not
object to the Court's consideration of any of these documents in
resolving the motion to dismiss. See Holowecki v. Federal Exp.
Corp., 440 F.3d 558, 565 (2d Cir. 2006) (considering plaintiffs'
EEOC filings, even though they were not attached to the
complaint, because "plaintiffs[] rely on these documents" to
satisfy the ADEA's exhaustion requirement).

1.  Failure to Exhaust Race and Age Claims

        Plaintiffs seeking to bring suit in federal court under
either Title VII or the ADEA are subject to exhaustion
requirements requiring timely filings with the EEOC or an
authorized state agency.  McPherson v. New York City Dept. of
Educ., 457 F.3d 211, 213 (2d Cir. 2006); Fernandez, 471 F.3d at
54.  A private Title VII plaintiff must undertake two steps to
properly exhaust his claims.  McPherson, 457 F.3d at 213.
First, as mentioned above, the plaintiff "must file timely
administrative charges with the EEOC."  Id.  The EEOC filing
must be made within 300 days of the alleged discriminatory
conduct to be considered timely.  42 U.S.C. § 2000e-5(e)(1);
Williams v. New York City Housing Authority, 458 F.3d 67, 69 (2d
Cir. 2006).  Second, the plaintiff must receive a "Notice of
Right to Sue" letter from the EEOC."  Williams, 458 F.3d at 69.[4]

---

[4] The regulation from which the requirement that the aggrieved
employee receive a "right-to-sue" letter states that:
            If a charge filed with the
            Commission . . . is dismissed by the
            Commission, or if within one hundred and
            eighty days from the filing of such
            charge . . . the Commission has not filed a
            civil action under this section . . . , the
            Commission . . .  shall so notify the person
            aggrieved and within ninety days after the
            giving of such notice a civil action may be
            brought . . .  by the person claiming to be
            aggrieved. . . .
42 U.S.C. § 2000e-5(f)(1) (as quoted in McPherson, 457 F.3d at
214).

For ADEA claims, a plaintiff must also file a timely charge with the EEOC.  McPherson, 457 F.3d at 213.  No right-to-sue letter, however, is required, and "a complainant may exhaust the administrative process by withdrawing agency charges so long as the charge was pending with the EEOC for at least 60 days."  Id. at 214-15.

The Title VII claim of race discrimination and the ADEA claim of age discrimination must be dismissed for Morrow's failure to exhaust his administrative remedies.  The only claim identified in the formal complaint dated February 8, 2008 that Morrow submitted to the EEOC was a retaliation claim based on the two letters he had written to the MTA President in 2007.  Neither of those letters, which Morrow attached to his EEOC complaint, alleged that Morrow had been the victim of either race or age discrimination.  Thus, Morrow failed to give the EEOC notice of the race and age discrimination claims.

Morrow does not contend that the formal charge he filed with the EEOC preserved his right to bring claims of race or age discrimination pursuant to Title VII and the ADEA, respectively.  Morrow instead relies on the recent Supreme Court decision in Federal Express Corp. v. Holowecki, 128 S.Ct. 1147 (2008), to assert that his intake questionnaire constituted a formal charge of discrimination or at the very least should be considered incorporated into the formal charge that he later filed with the

EEOC.  He further asserts that the checked boxes and one-paragraph narrative attached to the questionnaire were sufficient to notify the EEOC that his claims of discrimination were based on his age and race.[5]

Holowecki, which addressed the timeliness of an EEOC filing, explained that documents filed by employees with the EEOC "should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." Id. at 1160; Mathirampuzha v. Potter, 548 F.3d 70, 77 n.6 (2d Cir. 2008) (citing Holowecki). After examining the regulations governing the filing of ADEA charges of discrimination,[6] the Court determined that the proper test to determine whether a document is a charge of discrimination under the ADEA is whether the "filing, taken as a whole, should be construed a request by the employee for the agency to take whatever action is necessary to vindicate her

_____

[5] This is particularly unlikely for plaintiff's age discrimination claim.  In addition to checking the age discrimination box, the only information plaintiff provides on the questionnaire that could possibly indicate an age discrimination claim is a statement that he has 25 years of experience.

[6] The Supreme Court cautioned that the relevant regulations for enforcement of Title VII and the American with Disabilities Act may differ from those governing ADEA claims and require "careful and critical examination." Holowecki, 128 S.Ct. at 1153.  The parties have not suggested that any differences between the Title VII regulations and the ADEA regulations considered by the Supreme Court are material to the analysis in this case.

rights." _Holowecki_, 128 S.Ct. at 1155.   To make this
determination, the filing "must be examined from the standpoint
of an objective observer to determine whether, by a reasonable
construction of its terms, the filer requests the agency to
activate its machinery and remedial processes."  _Id._ at 1158.
Put otherwise, a charge should include "a request for the agency
to take remedial action to protect the employee's rights or
otherwise settle a dispute between the employer and the
employee."  _Id._ at 1157-58.  After all, as the Court observed,
many filings come to the EEOC from individuals who have
questions and simply want information, and the agency needs to
separate information requests from enforcement requests.  _Id._ at
1157.  Finally, the later filing of a formal charge does not
alter the determination, since "[p]ostfiling conduct does not
nullify an earlier, proper charge."  _Id._ at 1160.

      In _Holowecki,_ the Court noted that the wording of a form
questionnaire suggested that it was not a charge of
discrimination but was intended to facilitate pre-charge filing
counseling and to enable the EEOC to determine whether it had
jurisdiction over potential charges.  _Id._ at 1159.  As a result,
the EEOC "is not required to treat every completed Intake
Questionnaire as a charge."  _Id._  The individual questionnaire
at issue at issue in _Holowecki_, however, was supplemented with a
detailed six-page affidavit and a request that the agency

                                13

"please force [the employer] to end their age discrimination
plan so we can finish out our careers absent the unfairness and
hostile work environment."  Id. at 1160 (citation omitted).
This constituted a sufficiently clear request for the agency to
act that it was properly considered a charge of discrimination.
Id.

    Like the questionnaire considered in Holowecki, the
questionnaire that Morrow completed does not, taken on its own
terms, constitute a charge of discrimination.  It explained that
a completed questionnaire would assist the agency to determine
whether it had jurisdiction and whether it could counsel him
about filing a formal charge of discrimination.  Morrow's
completed form and its attached paragraph, taken as a whole and
examined from the point of view of an objective observer, is an
effort to provide relevant facts to the EEOC so it could make
those determinations; it is not a request that the EEOC activate
its enforcement machinery.  As a result, Morrow did not exhaust
administrative remedies regarding his claims of race and age
discrimination brought under Title VII and the ADEA.

    Given this result, it is unnecessary to determine whether,
if Morrow had filed a timely charge of discrimination, he
abandoned his race and age discrimination claims when he failed
to mention them in his formal charge of discrimination, and as a
result, is barred from pursuing them in this litigation.  While

there are sound reasons for not considering the later-filed formal charge when assessing whether an earlier filing was timely, see Holowecki, 128 S.Ct. at 1160, those reasons largely disappear when the issue at hand is a determination of the scope of the discriminatory conduct that the employee wants the EEOC to investigate and then litigate should mediation prove unsuccessful.[7]  After all, the "charge serves to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates."  Vital v.. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).  Exactly which "mandates" the EEOC will enforce depends on the content of the charge, which informs the EEOC's decision to "to investigate, mediate, and take remedial action."  Shah v. New York State Dept. of Civil Service, 168 F.3d 610, 614 (2d Cir. 1999) (citation omitted). If the charging instrument does not name a particular type of discrimination or reasonably indicate that a particular type of

---

[7] Applications of Holowecki in the Courts of Appeal do not address the issue in the instant case, which concerns whether claims raised in a previous submission to the EEOC necessarily inform the scope of conduct that will be investigated in the later-filed formal charge.  See, e.g., EEOC v. Watkins Motor Lines, Inc., 553 F.3d 593, 597 (7th Cir. 2009) (a charge withdrawn by an individual may still be pursued by the EEOC); Holender v. Mutual Industries North Inc., 527 F.3d 352, 356 (3d Cir. 2008) (document referring to itself as a "charge" qualified as such).

discrimination has occurred, there is no reason to believe that
the EEOC would activate its enforcement mechanism and commence
the remedial process <u>with respect to that specific type of
discrimination</u>.  The goals of the exhaustion requirement would
consequently go unfulfilled.

Neither may the age and race discrimination claims be
properly considered as "reasonably related" to the retaliation
claim Morrow asserted in his formal charge.  Once a plaintiff
has properly exhausted a claim "the plaintiff may raise any
claim that is 'reasonably related' to those asserted in the EEOC
filing."  <u>Ximenes v. George Wingate High School</u>, 516 F.3d 156,
158 (2d Cir. 2008) (citation omitted).  "[A] claim is considered
reasonably related if the conduct complained of would fall
within the scope of the EEOC investigation which can reasonably
be expected to grow out of the charge that was made."  <u>Id.</u>
(citation omitted).  Courts determining whether two
discrimination claims are reasonably related must ask "whether
the complaint filed with the EEO gave the agency adequate notice
to investigate discrimination on both bases."  <u>Mathirampuzha</u>,
548 F.3d at 77 (citation omitted).  The Second Circuit has
recognized a claim of race discrimination as "reasonably
related" to a claim of national origin discrimination where an
African-American employee charged that employees of Irish
descent received preferential treatment.  <u>Id.</u>  It has also held

that a sex discrimination claim related to an earlier-filed retaliation charge where the retaliation charge referred to sexual harassment and thus contained "the factual underpinnings of a gender discrimination claim." Id. (citation omitted).

Morrow's charge did not contain any indication that race or age discrimination was involved in the retaliatory practices he alleged had occurred.  An EEOC investigation regarding whether Morrow had been retaliated against for writing the MTA's President would not reasonably be expected to encompass age or race discrimination, given that Morrow never indicated that he contacted the MTA's President concerning age or race discrimination or indicated in the charge that race or age discrimination played a role in the retaliation.  There is therefore no basis for finding that the retaliation claim contained the "factual underpinnings" of race or age discrimination charges and that those charges should now be considered along with the properly exhausted claim.

2.  Retaliation Claim

    Title VII forbids employers from retaliating against an employee who "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Kessler v. Westchester County Dept. of Social Svcs., 461 F.3d 199, 205

(2d Cir. 2006).  The ADEA also prohibits employers from retaliating against an individual who has opposed any practice made unlawful under the ADEA.  29 U.S.C. § 623(d); Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 241 (2d Cir. 2007). To establish a prima facie case for retaliation under either statute, an employee must show (1) that he engaged in an activity protected under anti-discrimination statutes; (2) that the employer was aware of his participation in the protected activity; (3) that the employer took adverse action against him; and (4) that a causal connection existed between the employee's protected activity and the adverse action taken by his employer. Kessler, 461 F.3d at 205-06.  The same standard is applied under § 1981.  Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988).

"Protected activity" is an action taken to protest or oppose an employment practice that is prohibited by these same statutes.  Kessler, 461 F.3d at 210.  The employee meets this standard if he had a "good faith, reasonable belief that he was opposing" such a practice.  Id.  To satisfy the second prong (employer awareness), the reference to discrimination must put the employer on notice that the plaintiff is complaining that his or her rights under the ADEA or Title VII are being violated, although "general corporate knowledge that the plaintiff has engaged in protected activity" is sufficient.

<u>Patane v. Clark</u>, 508 F.3d 106, 115 (2d Cir. 2007) (citation
omitted).

Morrow's formal EEOC charge does not identify any complaint
about discriminatory conduct barred by either Title VII or the
ADEA.  Similarly, his amended complaint in this action fails to
identify any protected activity that could trigger a claim of
retaliation under either of these two statutes.  The only
complaints to his employer to which Morrow referred in his EEOC
complaint and in his amended complaint are the two letters he
wrote to the MTA President.  Neither of those letters, even when
liberally construed, complains of either race or age
discrimination.

In opposing dismissal of his retaliation claim, Morrow also
relies on the fact that he alluded to race discrimination in the
questionnaire that he submitted to the EEOC.  The protected
activity must, however, put the employer on notice of the claim
of discrimination and be causally linked to the adverse
employment action of which Morrow complains.  Morrow contends
that he was constructively discharged in November 2007, but
never asserts that the defendants learned prior to that time
that he had submitted a questionnaire to the EEOC in early
September, much less that they learned the contents of that
questionnaire.  As a result, any reference in the questionnaire
to race or age discrimination does not constitute protected

activity that can be linked to Morrow's constructive discharge in November 2007.

3.  Section 1981 Claim

Section 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens."  42 U.S.C. § 1981.  It includes a prohibition against employment discrimination based on race.  Patterson v. County of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004). Unlike Title VII and the ADEA, there is no exhaustion requirement for claims brought under § 1981.  Id. at 225.  When the defendant is a municipality, the plaintiff must show that "the challenged acts were performed pursuant to a municipal policy or custom."  Id. at 226.  A municipality may not be held liable for violating § 1981 under a theory of respondeat superior.  Id.

Morrow asserts that the MTA had several policies that were not followed in his case due to race discrimination.  For example, he asserts that it is the MTA's policy to meet with a driver who had been involved in an accident during its investigation of the accident, but that the MTA did not meet with him due to discrimination.  He complains that a younger, white bus driver who was a union representative was not required

to take a fitness-for-duty test after his bus hit a co-worker, even though such tests are required following an accident.

These allegations do not identify any discriminatory policy or practice.  To the contrary, Morrow is asserting that despite the existence of neutral and non-discriminatory policies, he was subjected to discriminatory treatment by his supervisors.

In opposition to the motion, Morrow recasts the allegations in his amended complaint.  He asserts that the defendants had a policy of not investigating accidents of white bus drivers, not reprimanding them for accidents, and not forcing them to sit idle for six months following vehicular accidents.  Morrow has not asked for leave to replead, but he will be permitted to file a second amended complaint to plead a § 1981 claim.

4.  Proper Defendants

Defendant argues that the NYCTA is not a proper defendant, because plaintiff was employed by MABSTOA, its subsidiary.  The complaint alleges that plaintiff was employed by MTA/NYCTA, although plaintiff's opposition does not contest defendants' assertion that he was actually employed by MABSTOA.[8]  The parties

---

[8] Although affiliated with the MTA, the NYCTA is a distinct legal entity with the statutory authority to sue and be sued in its own name. See N.Y. Pub. Auth. Law § 1204(1).  The MTA's functions are limited to financing and planning, while the NYCTA is in charge of operations, maintenance, and control of transportation facilities.  Delacruz v. Metropolitan Transp. Authority. 846 N.Y.S.2d 160, 161 (1st Dep't 2007).

also agree that plaintiff improperly named the MTA in the amended complaint, rather than the NYCTA alone.

NYCTA is a public benefit corporation created by the state of New York for the purpose of operating transit facilities. N.Y. Pub. Auth. L. § 1201 et seq. MABSTOA is a public benefit corporation that provides bus service and is a subsidiary of the NYCTA. N.Y. Pub. Auth. L. § 1203-a(2).

Parent corporations may, however, be named under certain circumstances in employment discrimination actions brought against their subsidiaries. A parent may be considered the employer of a subsidiary's employees for Title VII purposes if the two companies share "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Gulino v. New York State Educ. Dept., 460 F.3d 361, 378 (2d Cir. 2006) (citation omitted). The "centralized control of labor relations" element is especially important, and includes "tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions." Parker v. Columbia Pictures Industries, 204 F.3d 326, 341 (2d Cir. 2000).

The determination of whether a parent and a subsidiary may be treated as a single employer is ordinarily a question of fact inappropriate for resolution at this stage of the litigation.

Lihli Fashions Corp., Inc. v. N.L.R.B., 80 F.3d 743, 747 (2d
Cir. 1996).

The amended complaint does not distinguish between
employees of the various transit authorities, and defendants do
not explain why as a matter of law they may not be considered as
a single employer.[9]  Given the fact-intensive nature of the
single employer inquiry, and in the absence of any argument from
defendants that plaintiff has not alleged that the various
entities acted as a single employer, NYCTA will remain in the
lawsuit as a defendant.  Plaintiff will be given leave to amend
the complaint to remove the MTA and correct its
misidentification of the NYCTA as the "MTANYC."


CONCLUSION

The February 3, 2009 motion of the defendants to dismiss is
granted in part.  All claims against the MTA, all Title VII and
ADEA claims, and the request for punitive damages are dismissed
with prejudice.  Morrow may replead solely his § 1981 claim

---

[9] Second Circuit authority exists for treating the MABSTOA and
NYCTA as defendants collectively, where plaintiff was employed
by MABSTOA.  See Zerilli-Edelglass v. New York City Transit
Authority, 333 F.3d 74, 77 n.4 (2d Cir. 2003).

against MABSTOA and the NYCTA.   If he wishes to amend, he must do so by June 5, 2009.

SO ORDERED:

Dated:    New York, New York
          May 8, 2009

DENISE COTE
United States District Judge

24